**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>    **v.**<br><br>**ERIK SCOTT WARNER,**<br>**FELIPE ANTONIO "TONY" MARTINEZ,**<br>**DEREK KINNISON, and**<br>**RONALD MELE,**<br><br>    **Defendants.** | **Case No. 21-cr-392 (RCL)** |

**SUPPLEMENT TO THE GOVERNMENT'S**
**SENTENCING MEMORANDUM**

The United States files this supplement to the Government's Sentencing Memorandum, ECF No. 452, in response to the Erik Warner's Defendant's Sentencing Memorandum, ECF No. 455 ("Warner's Memo"). While Warner's Memo contains a series of factual inaccuracies related to Warner's criminal conduct—a number of which are already addressed in the government's prior filing, ECF No. 452—the United States will limit its response here to clarifying the record regarding Warner's decision not to plead guilty in this matter.

In Warner's Memo, the defense makes the following claims:

[I]t's important for this Court to know that Mr. Warner wanted to plead guilty a year before the trial date in this case and agreed to a plea agreement that the Government drafted and that AUSA Mariano agreed to. It was done and agreed to by all parties. Yet when Mr. Mariano sent it up to his supervisors for approval, they said no. No reason was given, just no. Again, Mr. Warner should not be held accountable for the unreasonable and inconsistent actions of supervisors at the U.S. Attorney's Office.

ECF No. 455, at 20–21. In seeking eleventh-hour credit for acceptance of responsibility that never happened, Warner's Memo misstates several important points here.

1

First, the plea negotiations Warner refers to did not take place "a year before the trial date." The plea negotiations Warner refers to occurred less than three weeks before the trial date. By that point, Warner had already declined multiple opportunities to plead guilty and accept responsibility. In September 2023, plea discussions occurred once again and resulted in the same outcome: Warner would not accept responsibility and plead guilty.

Second, it is untrue that any "plea agreement" was ever "agreed to" by the United States— or any member of the prosecution team. Here, the prosecution team agreed to discuss a concession Warner demanded—one of several—with supervision. As defense counsel well knows, the prosecution team never agreed to defendant's proposal, and, as the team made clear, it had no authority to agree to anything without a supervisor's approval, and did not believe the concession was factually appropriate. Defense counsel conflates the government's willingness to discuss a potential offer internally with an AUSA agreeing to make an offer. That never happened. Here, the only plea agreements ever offered were rejected—repeatedly.

Third, Warner complains of "inconsistent actions" in plea offers, and states, in a footnote, "many other J6 defendants have been given the opportunity to plea guilty to 1512 offenses." ECF No. 455 at 21 & n.13. Warner thus implies he was denied this opportunity. But, of course, Warner always had the ability to plead guilty to Section 1512 offenses, since his only felony charges were under Sections 1512(k), 1512(c)(2), and 1512(c)(1). At any time prior to trial, Warner retained the ability to request a hearing to change his plea to guilty to these charges and accept responsibility. He never did.

Finally, the purpose Warner has injected discussion of plea negotiations into these

2

sentencing arguments at all is to support the erroneous claim that Warner has "accepted full responsibility for his conduct."   ECF No. 455 at 35.   But this is plainly untrue.   Indeed, despite the unanimous jury verdict convicting him of all counts, Warner's Memo continues to deny factual guilt to this day.   *Id.* at 2 ("Mr. Warner was not there to stop a vote or to interfere with anyone; that was never his intention.   He simply went to DC to see the President speak."), 10 ("[I]t was never established at trial that Mr. Warner had the intent to interfere with the certification at all."), 11 ("[H]e did not send any text messages indicating that he was planning to engage in any conspiracy."), 12 ("[T]here is absolutely no evidence in the record that he pre-planned to hinder Congress in any way."), 12 ("He did [not] willfully obstruct or impede the administration of justice, nor did he attempt to conceal his involvement in the instant offense by deleting the DC Brigade Telegram chat from his phone.").   As with Warner's Memo, Warner's own letter to the Court similarly does not acknowledge any wrongdoing for conspiracy, obstruction, or destruction of evidence.   *Id.* at 48.   With statements like these, a plea agreement was clearly never realistic, because the Court would not accept a guilty plea from a defendant so stridently refusing to acknowledge his guilt.

At the end of the day, the defendant never pleaded guilty.   He never accepted responsibility for the felonious conduct he was convicted of.   And he continues to make baseless factual assertions about the evidence, and to proclaim his innocence.   The Court should reject the suggestion that he has accepted responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:     /s/ Anthony W. Mariano
        ANTHONY W. MARIANO, MA Bar No. 688559
        JASON M. MANNING, NY Bar No. 4578068
        TERENCE A. PARKER, NY Bar No. 5775192
        Trial Attorney, Detailees
        Capitol Siege Section
        United States Attorney's Office
        for the District of Columbia
        601 D Street N.W.
        Washington, DC 20530
        (202) 476-0319
        Anthony.Mariano2@usdoj.gov
        (202) 514-6256
        Jason.Manning@usdoj.gov
        (202) 803-1600
        Terence.Parker3@usdoj.gov

4