Steven Bailey SBN 146382
Bailey and Romero Law
680 Placerville Drive Suite A1
Placerville, CA 96667
Phone: (530) 647-3554
Email: steven@baileyandromero.net
Attorney for Ronald Mele

# UNITED STATES COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,** | Case No.: 21-cr-392-6 (RCL) |
| Plaintiff, | **AMENDED SENTENCING MEMORANDUM** |
| vs | |
| **RONALD MELE,** | |
| Defendant | |

## INTRODUCTION

Ronald Mele ("Defendant"), by and through counsel, hereby submits the following sentencing memorandum.

The court had set April 19, 2024, as the date for sentencing after a jury trial that ended with the defendant being convicted by a unanimous jury of the following charges:

1. Count 1: Conspiracy to obstruct official proceeding.
   18 USC § 1512(k)

2. Count 2: Obstruction of an official proceeding and aiding and abetting.
   18 USC § 1512 (c)(2) and 2

3. Count 3: Entering and remaining in a restricted building or grounds with a deadly or dangerous weapon.
   18 USC §1752(a)(1)

//
//

4. Count 4:    Disorderly and disruptive conduct in a restricted building or grounds.
with a deadly or dangerous weapon.
18 USC §1752(a)(2)

# I.

## OBJECTION TO CHARGED BUT UNPROVEN ALLEGATIONS

The Sentencing Reform Act of 1984, which established the U.S. Sentencing Guidelines, is in relative terms fairly recent in terms of the time it takes any new legislation to be applied and interpreted features of the legislation tested and resolved on appeal.

Counsel appreciates that some very important and significant aspects of the U.S. Sentencing Guidelines remain in need of further clarification and that it is work intensive for Pre-Trial Services to painstakingly carry out the task at hand thoroughly.

Nevertheless, the Defendant cannot be sentenced for what he did not do. Accordingly, reciting the allegations from the indictments is not the same as stating what Defendant Mele was found guilty of. The Courts are clear, and even include in jury instructions, that indictments are not evidence and should not be considered as evidence.

Therefore, the Defendant objects to consideration of Part A, paragraphs 1 to 65, summarizing the indictment against Mele. In paragraph 38, Pre-Trial Services candidly explains "Information contained in this section was taken from the various Indictments filed in this case and other information provided by the government."

While the task of cross-referencing what was alleged against what the Defendant was found guilty of is a heavy and time-consuming one, the Constitutional command that a person be deprived of liberty or property only upon due process is equally heavy. While Counsel does not

fault Pre-Trial Services in its challenges, Mele can simply not be sentenced for more than what he did.

Unfortunately, it is also not constitutionally acceptable to track the testimony and evidence submitted in trial.  A jury can and should decide each individual Count if there is sufficient evidence supporting that separate Count.  A conviction does not mean that the jury believed or accepted every point of testimony or document submitted, only that the jury thought there was enough evidence for a conviction, even if some of it might not have been persuasive.

In the absence of a special verdict of particular factual conclusions, a court can only be certain that factual findings without which the jury could not have found guilt under a Count were believed by the jury.

For example, in paragraph 59, the report recites an exchange clearly showing an impromptu, unplanned decision to enter the U.S. Capitol.  This accusation does not, for example, support sentencing for any planning or conspiracy to do anything decided upon at the spur of the moment.

## II.

**DEFENDANT RONALD MELE DID NOT POSSESS FIREARMS OR OTHER DANGEROUS WEAPONS ON THE CAPITOL GROUNDS ON JANUARY 6TH.**

Ronald Mele did not possess firearms or other dangerous weapons at the Capitol grounds on January 6th. Contrary to what is stated in the pre-sentence report, the evidence showed at trial that defendant did not have a knife attached to the plate protector vest that he was photographed wearing at the Capitol.

Additionally, the defendant testified that he had removed the plate from the front of the plate protector and only had a plate in the rear of the vest because he was concerning about someone assaulting him from behind and had no fear that he would be assaulted from the front.

When the shield protector was photographed over a month later at the defendants' home in California it had been reconfigured for its storage in the closet. At that time the plate protector vest had a knife attached. This is the way the defendant would store gear. However, this is not how the plate protector vest was configured on January 6th.

The defendant fully admits that he did possess bear spray which was attached to his vest on January 6th. He was photographed with the spray attached to the pocket of the vest. However, it should be noted that he never removed the canister from the pocket and never discharged the spray. We know that he never used the spray because the safety was still attached when he was photographed leave the restricted area.

### A. DEFENDANT RONALD MELE DID NOT COLLECT WEAPONS TO TAKE TO THE CAPITOL.

The defendant testified that he brought a handgun and a long gun (shotgun) to Washington DC and locked the handgun in the hotel safe. The handgun that the defendant possessed in the hotel in Washington was for personal defense during the trip to and from the events on January 6th. Once in the hotel safe the firearms remained in the safe and were only removed for the return trip to California.

With the exception of a shotgun, which was locked in the vehicle that they drove in from California, no weapons were taken on the streets of Washington DC. The defendant testified that he was aware that his concealed weapons permit from California would not provide authorization for him or those with him to possess firearms in a

concealed manner and that he did not conceal those weapons on his person during his stay in Washington DC.

The defendant testified that while traveling cross country, when in a jurisdiction where his CCW permit was not authorized, his handgun was placed in a locked container. Washington DC was no exception. When he was in the District, the firearm was locked away on was not on his person in a concealed manner.

The presentence report suggests an enhancement pursuant to USSG §2J1.2(b)(3). USSG §2J1.2(b)(3) reads as follows:

(3) If the offense (A) Involved the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects; (B) involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter; or (C) was otherwise extensive in scope, planning, or preparation, increase by two levels.

Simply traveling with "gear" to Washington DC regardless of the reason does not trigger the application of this section. Planning the trip, driving cross country with "gear" including some firearms that were never taken to out to the streets of Washington DC does not constitute what is contemplated by this section. These items are obviously not documents or tangible objects and there was not *"otherwise extensive in scope, planning, or preparation"* in the defendants travel plans and arrangements.[1]

It is not appropriate to "cherry pick" language out of a unrelated guideline and then impose a 2-level addition pursuant to USSG §2J1.2(b)(3).

---

[1] USSG §2J1.2(b)(3) contemplates the destruction of papers, records or other tangible objects or the extensive planning or preparation to destroy the same.

Nothing that the defendants did in this case was so extensive in scope, planning, or preparation as to warrant this 2-level increase.

The rest of the section involves the destruction of documents and evidence that could have been used in a proceeding. This defendant did not destroy any evidence, document or other tangible item.

The defendants in this case simply agreed to travel to Washington, DC and except for bringing firearms for protection on the trip, nothing out of the ordinary justifies a 2-level increase. [2]

### III.

### WHILE PRESENT WITH THE MOB ON JANUARY 6TH, DEFENDANT RONALD MELE WAS A MINOR PARTICIPANT IN THE RIOT.

While the defendant admitted that he was present in the mob and did nothing to prevent the movement of the mob, nor did he do anything to protect the law enforcement officers that were being assaulted by the crowd, he always believed himself to be a rather minor participant in the events of January 6th. The belief that he was a minor participant in the crowd which his personal belief and yet he has taken responsibility for his actions on that date.

---

[2] **Inapplicability of § 3C1.1**--For offenses covered under this section, § 3C1.1 (Obstructing or Impeding the Administration of Justice) does not apply, unless the defendant obstructed the investigation, prosecution, or sentencing of the obstruction of justice count.
U.S.S.G. 2J1.2
The Court should consider whether USSG §2J1.2 or §3C1.1 can both apply in this instance.

6
DEFENDANT RONALD MELE AMENDED SENTENCING MEMORANDUM

It is not true, that he minimizes his responsibility. Defendant statement of responsibility is attached to the pre-sentence report on page 14 at paragraph 80.

### IV.

### DEFENDANT RONALD MELE TESTIFIED TRUTHFULLY AT TRIAL.

Defendant testified that he never saw the prior Telegraph messages. He joined the DC brigade telegram chat approximately two hours after the original messages were posted and there was no actual evidence that the defendant saw the prior messages. In fact, his testimony was that he never saw the posts and therefore was truthful when he testified at trial. The Government offer no evidence to the contrary, other than their spin on the evidence, to contradict the testimony.

### A.   IMPOSITION OF A 2-LEVEL ADJUSTMENT PURSUANT TO USSG §3C1.1 IS NOT JUSTIFIED.

United States sentencing guidelines §3C1.1 reads as follows:

§3C1.1  <u>Obstructing or Impeding the Administration of Justice</u>

If (1) The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) The obstructive conduct related to (A) The defendants offense of conviction and any relevant conduct; or (B) a closely related offence, increase the offense level by 2 levels.

The commentary on the guidelines provides relevant direction. In #2 of the commentary for §3C1.1 the following clarifications are provided:

2.   <u>Limitations on Applicability of Adjustment</u>. —*This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt* or provide information to a probation officer, or refusal to enter a plea of guilty *is not a basis for application of this provision.* In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may

result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

At trial, the defendant testified truthfully as to what his involvement was with the DC Brigade Telegram chat.

He testified that he was not one of the original parties to the chat and was added several hours after the original posts were made to the DC Brigade Telegram chat. There was no evidence presented that contradicted the defendant's testimony.

The government's contention that because certain posts appeared on the defendant's phone at some point prior to the defendant being added to the chat does not materially contradict what the defendant testified to concerning the DC Brigade Telegram chat.

Further, at trial the defendant never denied that he was added to the Telegram chat. His testimony was that he was a minimal participant on that chat and because of his work schedule did not have time to read most of the posts and that he never went back to read anything that was posted prior to him being added to the chat. Moreover, the defendant quickly lost interest in the telegram chat as was evidenced by his lack of involvement in posting on the chat.

However, he also never attempted to downplay or deflect responsibility from himself for being on the chat such that a 2-level enhancement would be appropriate.

Adding 2 levels pursuant to USSG §3C1.1 should be rejected by the court.

## V.

## OBSTRUCTION OF OFFICIAL PROCEEDING

Although the jury convicted Mele of 18 U.S.C. 1512(k) and (c)(2), the indictment allegations state that the Joint Session of Congress recessed at around 2:20 PM, however,

Paragraph 59 of the Report alleges that Mele and other codefendants arrived at the outside of the Capitol building only at around 2:25 PM.  Thus, it is a metaphysical impossibility for Mele at 2:25 PM to cause an obstruction at 2:20 PM (or likely much sooner as things take time to unfold). The indictment alleges that Mele stayed on Capitol Grounds until approximately 4:18 PM.  The Government has attempted to escape the laws of physics and time by stating – without evidence or proof – that resuming the Joint Session of Congress would have taken time.  But never has the Government identified by competent expert testimony how long it would take to sweep the Capitol so that Congress could resume its activities at around 8:00 PM.  No evidence was presented here that Mele being on the Capitol Grounds until around 4:18 PM slowed down a security sweep of the interior of the Capitol building by even one second.  One can speculate, imagine, and hypothesize that at some point a delay could have occurred.  But no competent evidence was presented to establish it.  Therefore, no points should be awarded.

## VI.

## COLLECTIVE ACTIONS NOT RELEVANT

Tracking the vagueness of the indictment, the Report, paragraph 75 once again talks about what other people did:  "This offense involved a large crowd of individuals who gathered outside the U.S. Capitol, some of whom ultimately forced entry inside the building…."

Of course, what other people did or some unidentified people did has no bearing on Defendant Mele.  Constitutionally, Mele can only be punished for his own individual actions, not the actions of others.  The recitation of what "some people" did is astonishingly vague, ambiguous, and non-responsive to the issues.  It is simply of no relevance what anyone else did.

//

//

## VII.

## MISCELLANEOUS ISSUES

Paragraph 118-   The defendant lives in a home that is 1915 square feet. It is 3 bedrooms and 2 bathrooms. After the defendant's indictment and arrest, he was unable to find high paying employment, and he was not considered credit worthy and as a result he is not on title for this home.

Paragraph 141-   The home's actual value is approximately $379,499. This value is achieved by comparing new homes with the same floorplan for sale in the general neighborhood. As noted above, the defendant is not considered credit worthy by lenders due to the arrest and indictment. Therefore, he is not in the title and has no interest in this property.

Paragraph 125-   While the pre-sentencing report states that "[h]e did not report any lingering side effects, the defendant does continue to experience atrophy and reduced dexterity in the use of his left hand.

Paragraph 148-   At the beginning of the case, defendant attempted to retain counsel for the defense. Some funds were raised at that time ($5,200.00). All the funds raised were used to retain counsel. None of the funds received went for living or entertainment.

Paragraph 152-   For the tax year 2022, the defendant's gross earnings were $44,535. For the tax year 2023, the defendant will show a gross earnings of about the same amount.

//

//

# VIII.

# CONCLUSION

Defendant Ronald Mele submits this memorandum for the court's consideration. Defendant requests the court's leniency in this matter and that the court consider a grant of probation with no prison.

The defendant request that the court consider the fact that the defendant engaged in no direct violence against law enforcement, that he did not bring firearms or deadly weapon onto the Capitol grounds, that he did not go into the Capitol building itself, that while he made his way to the West Terrace, he was present on the West Terrace for approximately 10 minutes before he left the area and went back to the lawn and engaged in no further activity with the mob. Defendant also requests that the Court consider that he left the grounds of the Capitol and returned to his hotel before the citywide curfew went into effect.

The defendant also would request that should the Court impose in custody time, that the Court would allow the defendant to turn himself into the facility on a date set by the Court and that the Court recommend that the time be served in a facility in or near San Antonio, Texas, so that the defendant can remain in contact with his family. The closest facility to the defendants family is Bastrop Federal Prison in Bastrop, TX. Should the court determine that imprisonment is is to be the outcome, the defendant would request that the court recommend to the Bureau of Prisons incarceration in this or another locally situated facility.[3]

---

[3] The defendant notes that the government sentencing memorandum was filed on April 12, 2024 and the defendant respectfully request permission to respond in writing, if necessary, to allegations and contentions raised in their memorandum.

11
DEFENDANT RONALD MELE AMENDED SENTENCING MEMORANDUM

Respectfully Submitted,

Dated: April 14, 2024

*/s/ Steven C. Bailey*
*Bailey and Romero*
680 Placerville Drive, Suite A1
Placerville, CA 95667
Phone: (530) 647-3554
steven@baileyandromerolaw.net

I hereby certify that on the 14th day of April 2024, I filed the foregoing submission with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) To the following CM/ECF users: Counsel of Record.

*/s/ Steven C. Bailey*
*Bailey and Romero*
680 Placerville Drive, Suite A1
Placerville, CA 95667
Phone: (530) 647-3554
steven@baileyandromerolaw.net